Plaintiff, Mrs. Gladys S. Beridon, has filed this suit in which she has alleged that a taxicab belonging to the defendant A. A. Lindley and insured by Lloyds Casualty Insurer, co-defendant, struck her on or about the 5th day of August, 1943, and as a result she suffered personal injuries for which she is seeking to recover damages in the amount of $36,700. Plaintiff sets forth in her petition that on or about the 5th day of August, 1943, she was driving her car east on the extension of Boyd Avenue in the City of Baton Rouge and had as her guests Gladys Mae Beridon and Herbert Vidrine, whom she was taking to the bus station as they were going to Opelousas, Louisiana, when her car ran out of gasoline and stopped; that her daughter went to a nearby telephone and called the defendant's cab stand for a cab which was sent out; that when the cab stopped, her daughter and Vidrine put their luggage in the cab and got into the cab; that plaintiff requested the driver of the cab, a Mr. Watson, to stop at a nearby filling station on Main Street and have some gasoline sent to place in her car; that plaintiff expected the cab driver to make a right hand turn into North 13th Street, as this was the nearest route from the point where the cab had been parked to Main Street and the filling station from which the driver had agreed to order gasoline for plaintiff, and it was also the logical route for the cab to take to deliver its passengers to the bus station; that acting upon this assumption, plaintiff started walking on Boyd Avenue to her automobile and had reached a point near the middle of the intersection of Boyd Avenue and North 13th Street when the driver of the cab which had cleared the intersection and was completely in North 13th Street suddenly stopped his cab and, without looking back, or sounding his horn, backed the cab up rapidly and struck the plaintiff and dragged her approximately 20 feet; that as a result of the accident she suffered severe injury of the left sacro-illiac joint and an hypertrophic arthritis in the region of the left sacro-illiac joint. Plaintiff alleged in the alternative that if this arthritis was preexisting, then and in that event it was aggravated by the injury; that she has been compelled to employ physicians to treat her and will continually need medical treatment for which she asks the sum of $2500. She further set forth that she was running a boarding house at the time of the injury from which she earned a profit of $75 each month and because of her injury, she has been permanently disabled from doing this work and will be deprived of $75 per month for the balance of her life which she alleges has an expectancy of 32 years and nine months, and therefore claims the sum of $26,200 for this item; that she has suffered and will for the balance of her life suffer exquisite pain as a result of this injury or the aggravation thereof, for which she claims $7,800, or a total of $36,700.
The defendants, through their counsel, excepted to the plaintiff's petition on the ground that the allegation in Article 5 of plaintiff's petition that the accident occurred on August 5, 1943, is erroneous and defendants allege that the accident occurred on August 1, 1943, and that consequently plaintiff's demands were prescribed by the prescription of one year.
The minutes of the Court for October 23, 1944, are as follows:
"The case was taken up on plea of prescription filed herein. Evidence was introduced, and the Court, for oral reasons, referred said plea to the merits of the case. Case assigned for trial, by consent of counsel, on December 14, 1944."
The case was then taken up on its merits and tried and the judge, with written reasons, reached the conclusion that the preponderance of the evidence "was that the accident complained of occurred on the first day of August, 1943. As the suit was not filed until August 6, 1944 (should be August 5, 1944), plaintiff's cause of action is prescribed." The Lower Court therefore sustained the plea of prescription and dismissed the suit at plaintiff's costs.
From this judgment, plaintiff has prosecuted this appeal.
In this case, it was shown that the plaintiff, Mrs. Gladys S. Beridon, operated a boarding house in the city of Baton Rouge and on the date of the accident intended to *Page 158 
take her daughter, Gladys Mae Beridon, and one of her boarders, Herbert Vidrine, to the bus station as they intended to go to Opelousas, Louisiana. She was driving her automobile and it gave out of gas, and her daughter accordingly phoned the defendant cab company. In response to this call, a cab driver by the name of Bob Watson came to the place where plaintiff's car was stopped and picked up plaintiff's daughter and Vidrine in order to take them on to the bus station. The cab backed up and struck the plaintiff who was walking behind him.
Mrs. Gladys S. Beridon, the plaintiff herein, was called under cross examination on the trial of the plea of prescription and testified that the accident happened on August 5, 1943, and that she arrived at the date of the accident by reason of the fact that her daughter was going to Opelousas and she had some letters while she was gone indicating the date and that the date of the accident was on Thursday. Mrs. Beridon at this time denied making any statement to her attorney, Mr. Litton, whom she first employed and who went into the service prior to filing the suit, and thereafter the suit was turned over to present counsel. However, she denied making any statements to Mr. Litton, to Dr. Kern and to her present attorney. Mr. Sam Robertson, that the accident occurred on August 1st and at that time stated that she was positive that she had not made any such statement. She further testified that she knew it happened in the morning for the reason that her daughter and a boarder at her home, Mr. Vidrine, were going to Opelousas and were going to catch the 10:30 A.M. bus on Thursday.
A. A. Lindley testified that he was the owner of the Capitol Cab Company and that at the time of the accident, Mr. Bob Watson was employed as one of his drivers and that Watson had an accident while driving his taxicab. Lindley testified that his company kept a daily report in the form of a card upon which is shown the time the driver leaves, the time he returns, and the amount of passengers hauled, and that these drivers were paid daily on a commission basis. He testified that these cards were prepared under his supervision but by B. E. Norwood, an office boy. Norwood was placed on the stand and testified that cards of the Capitol Cab Company for August 1, 2, 3, 4 and 5, 1943, were prepared by him and showed the trips made by M. B. Watson from August 1st through August 5th, 1943. Norwood, in response to a question by Counsel as to how he knew that Watson made the trip on August 1st to plaintiff's house, stated: "He came back and reported the accident." The card of August 1, 1943, shows a trip to Boyd Avenue and that the cab left at 2:45 and returned at 3:00. These cards do not show any other trip to Boyd Avenue between these dates.
Defendants next offered the testimony of M. B. Watson, the driver of the cab involved in the accident, who testified that he did not remember the exact date but that it was on a Sunday and he remembered that it was Sunday because he couldn't get any gas. Mrs. Beridon had asked him to get some gas for her and, as it was Sunday, the stations were closed. He did not say whether the accident was on the 1st or the 5th but was positive in his testimony that the accident was on a Sunday and not on a Thursday. He identified the cards introduced in evidence as being the usual type cards made out and that he was interested in these cards as he was paid daily on a commission basis. He was also positive in his testimony that he made this trip along about the first of August because he had just started working steady for the defendant, and further stated that if he had gone to Boyd Avenue on another occasion on those dates, the cards would show it. Another reason that he gave for remembering it which, in our opinion, was a good one, was the fact that this was the first accident "I ever had." He testified that this trip was on a Sunday afternoon. This witness testified that after the accident, Mrs. Beridon got in his cab or was put in his cab and rode about a block to the front of her home. In connection with this witness' testimony, his written statement, made on September 27, 1943, was offered in evidence and in this statement he stated that on or about the first day of August, 1943, he was driving for Capitol Cab Company *Page 159 
and during the afternoon he made the trip to Boyd Avenue and it was at this time that he struck the plaintiff.
Mrs. Marie Thibodeaux, witness on behalf of the defendants, testified that she was employed by Hawthorne, Waymouth Payne, auditors, as secretary but that she did some bookkeeping, of course, which consisted in making a work sheet from the daily cards such as were introduced in evidence, and she identified her work sheet which had been made from the cards introduced in evidence and stated that the information on the work sheet was the same as that shown on the cards.
Counsel for defendants at this time also introduced a letter from Mr. Robertson, present attorney for the plaintiff, addressed to counsel for defendant, Baggett and Williams, and in this letter, which was a demand for payment of plaintiff's damages in the sum of $37,064, Mr. Robertson stated that her injuries were due to or aggravated by the accident which occurred "on or about the first day of August, 1943 * * *"
Plaintiff offered as a witness, Miss Gladys Beridon, daughter of the plaintiff, and she testified that she was with her mother when she was hurt by the taxicab; that she knew that the accident happened on Thursday, August 5, 1943, and she knew it was Thursday because her "kid sister was at school and she would not have been at school on Sunday, and my other sister was working and she came in for lunch just before we left and I know I didn't go to church that morning and I would have gone if it had been Sunday, around ten or eleven o'clock, and I know I arrived in Opelousas that afternoon." She also testified that she had received a letter from Wilda, Louisiana, in response to a letter she had written a friend of hers in which she told her that by the time she received the letter she would be married. She introduced in evidence an envelope postmarked August 9, 1943, from Wilda, Louisiana, addressed to Mrs. Frank Oslen, 972 Boyd Avenue, Baton Rouge, Louisiana. There is no explanation of why the letter is addressed to "Mrs. Frank Oslen", however, we can only presume that she must have told her friend that she would be Mrs. Frank Oslen. She testified that this letter was kept by her mother until she returned from Opelousas on the following Thursday, which would be August 12th. We fail to see wherein this letter would establish August 5th as the date of the accident. We note that the District Judge also stated that he could see no connection between this letter dated August 9th and the date of the accident and sustained counsel's objection to the effect that it was not relevant and had no connection with the date of the accident. It would appear that it should not have been filed; however, it does no harm. The testimony of Miss Gladys Beridon is not convincing.
On the trial on the merits, counsel for defendants offered in evidence the original statement of Mrs. Beridon, plaintiff, which was in the handwriting of Mr. Dupre Litton under date of September 10, 1943, and who was the attorney for the plaintiff at that time and prior to his entering the service. In this statement, which is signed by Mrs. Gladys S. Beridon, plaintiff states that the accident occurred "on or about the first of August."
Also offered is a statement dated September 10, 1943, and signed by Herbert Vidrine and Gladys Mae Beridon which states: "We have read Mrs. Gladys S. Beridon's statement made this day and can verify every detail of it. In particular, the cab driver backed into Boyd Avenue without giving any signal and without looking back to see where Mrs. Beridon was."
Also filed in evidence by the defendant is a copy of a letter dated September 7, 1943, addressed to Capitol Cab Company and signed "Albritton, Ware Litton, by __________," in which they state that plaintiff was injured when a taxicab driven by one of Capitol Cab Company's drivers backed into her "on or about August 5, 1943." It will be noted, however, that this letter is dated September 7th or three days prior to the statement of September 10, 1943, signed by Mrs. Beridon and verified on the same date by signed statement of Herbert Vidrine and Gladys Mae Beridon. *Page 160 
On the trial on the merits, Dr. Lawrence J. Kern was called as a witness on behalf of the plaintiff and testified that Mrs. Beridon gave him the date of August 1, 1943, as the time of her injury, and that he was positive that that was the date she stated as "That is the only way I could have gotten it," and counsel asked this witness if it was not possible that she could have said " 'on or about August 1' and you put it August 1," to which he answered, "No. She told me August 1st. That is what I have got here." He was positive in his testimony as to the date given him by Mrs. Beridon, and defendants have offered a copy of letter dated March 10, 1944, addressed to Mr. Sam Robertson, counsel for plaintiff, from L. J. Kern, M. D., in which the subject was, "Re: Mrs. Gladys Beridon" and in which Dr. Kern stated, "On August 1, 1943, the above named was knocked down by a cab * * *."
Dr. J. L. Godfrey, called as a witness on behalf of the defendants, testified that he had examined Mrs. Beridon on the 5th day of June, 1944, and that she had stated to him, "that early in August, 1943 she was involved in an automobile accident and received back injuries. * * *"
Mrs. Gladys Beridon, when placed on the stand on the merits, testified that the accident occurred on the 5th day of August, 1943, but that she did not know exactly the day of the week, however, it was the middle of the week because "my little girl goes to school and she was not at home with me." It will be noted that when this witness testified on the plea of prescription hearing, she definitely stated in response to "What day of the week was it?" that "It was on Thursday." Furthermore, this witness did not mention her little girl in her testimony on the trial of the plea of prescription.
Miss Gladys Mae Beridon also testified on the merits and the Court questioned her as to the date, and she stated that she believed it was August 5th. The Court then asked her: "Do you think or do you know?" Her answer was "I am almost positive of it." The Court further asked her, "How do you arrive at that?" Her answer was, "I know, because I was in Opelousas at the time." This is not very convincing testimony, especially in view of the written and positive testimony to the contrary.
Herbert Vidrine did not testify but the plaintiff testified that she had made an effort to get him and had promised to pay his expenses if he would come, but that he did not show up.
From this testimony, we are convinced that the judge was correct in his judgment when he stated that the preponderance of the testimony was to the effect that the accident occurred on August 1, 1943, and not on August 5, 1943, and, as the suit was filed on August 5, 1944, that the plea of prescription should be maintained. The testimony of the plaintiff and her daughter cannot stand in the face of the documentary evidence offered and their contrary statements made within a short period after the date of the accident.
It is evident that the Trial Judge did not give much probative value to the testimony of the plaintiff and her daughter, and as the question in this case is one of fact, the Trial Judge's opinion is entitled to great weight, and as we can find no manifest error in his judgment, it is hereby affirmed. *Page 161